# United States District Court
# Central District of California

| | |
|---|---|
| ELWYN ROBINSON,<br><br>                    Plaintiff,<br><br>          v.<br><br>PPG INDISTRIES, INC., et al.,<br><br>                    Defendants. | Case №: 2:19-cv-04033-ODW (RAOx)<br><br>**ORDER DENYING MOTION TO REMAND [11]** |

## I.    INTRODUCTION

On March 8, 2019, Plaintiff Elwyn Robinson ("Robinson") filed this action for violation of the California Fair Employment and Housing Act ("FEHA") in the Superior Court of California for the County of Los Angeles.  (Notice of Removal Ex. B ("Compl."), ECF No. 1-2.)  Defendant PPG Industries, Inc. ("PPG") removed this matter based on federal diversity jurisdiction.  (Notice of Removal 1, ECF No. 1.)  Robinson moves to remand.  (Mot. to Remand ("Mot."), ECF No. 11.)   For the reasons that follow, the Court **DENIES** Robinson's Motion.[1]

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Robinson was born on November 16, 1957.  (Compl. ¶ 10.)  Robinson has substantial experience and education pertinent to commercial manufacturing

---

[1] After carefully considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

operations, including a Master's Degree in Business Administration, Project Management Professional, and a graduate degree in Lean Six S. (Compl. ¶¶ 11–12.)

In early October 2018, PPG's agent Ron Lyndon ("Lyndon") informed Robinson about the availability of a Manufacturing Manager position at PPG's facility in Mojave, California. (Compl. ¶ 14.) On or about October 10, 2018 Robinson participated in a telephonic interview with the Mojave facility's on-site manager David Sebold ("Sebold") (Compl. ¶¶ 14–15.) Sebold told Robinson he was under consideration for the position and the interview concluded on cordial and favorable terms. (Compl. ¶ 15.)

On October 15, 2018, Lyndon told Robinson that Sebold was concerned that Robinson was "too senior" for the role. (Compl. ¶ 16.) Robinson disagreed with the perception that he was "too senior." (Compl. ¶ 16.) On October 23, 2018 Lyndon sent an email stating that Robinson was "too senior" for the position and PPG did not offer him the position. (Compl. ¶ 18.)

On March 8, 2019, Robinson brought this action against Defendants PPG, and Sebold for violations of the California Fair Employment and Housing Act ("FEHA") pursuant to Cal. Govt. Code § 12940. (Compl. ¶ 2.) Robinson alleges that substantial factors motivating PPG's decision to not hire him were his age, 61 at the time, and his opposition to the perception that he was "too senior." (Compl. ¶ 19.)

On May 8, 2019, PPG removed this action based on federal diversity jurisdiction. (Notice of Removal 1.) PPG alleges that, although Sebold is a citizen of California, he was fraudulently joined to this action as a sham defendant, and therefore, Sebold's citizenship should be disregarded for purposes of diversity jurisdiction. (Notice of Removal ¶¶ 18–19.) Robinson now moves to remand on the basis that the Court does not have jurisdiction over the matter because diversity jurisdiction is not satisfied. (Mot. 6–13.)

## III. LEGAL STANDARD

Federal courts have subject matter jurisdiction only as authorized by the

Constitution and Congress. U.S. Const. art. III, § 2, cl. 1; *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court only if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). Federal courts have original jurisdiction where an action arises under federal law, *id.* § 1331, or where each plaintiff's citizenship is diverse from each defendant's citizenship and the amount in controversy exceeds $75,000, *id.* § 1332(a).

The removal statute is strictly construed against removal, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The party seeking removal bears the burden of establishing federal jurisdiction. *Id*.

## IV. DISCUSSION

PPG invokes diversity jurisdiction as grounds for this Court's subject matter jurisdiction. (Notice of Removal ¶ 1.) The Supreme Court "ha[s] consistently interpreted § 1332 as requiring complete diversity: In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005).

Under section 1332, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c). The "nerve center" test is used to determine where a corporation's principal place of business is located. *Hertz Corp. v. Friend*, 559 U.S. 77, 78 (2010). A corporation's principal place of business, for diversity jurisdiction purposes, is its "nerve center," where the corporation's officers direct, control, and coordinate the corporation's activities. *Id*. at 90, 93. The nerve center of a corporation is ordinarily the location where it maintains its headquarters. *Id*. at 93. If there is doubt about whether diversity exists, the Court may demand the

party claiming diversity jurisdiction justify its allegations by a preponderance of the evidence. *Harris v. Rand*, 682 F.3d 846, 851 (9th Cir. 2012).

**A. Robinson's Diversity**

Robinson argues that complete diversity does not exist because he and PPG are citizens of California. (Mot. 6.) Robinson and PPG agree that Robinson is a citizen of California. (Notice of Removal ¶ 13.) Thus, the Court finds that Robinson is a citizen of California for diversity purposes.

**B. PPG's Diversity**

Robinson argues PPG is a Pennsylvania corporation with its principal place of business is in Glendale, California. (Mot. 6.) Robinson's counsel, Francis X. Flynn ("Flynn"), states he conducted an internet search which revealed that PPG lists their corporate headquarters in Pittsburgh, Pennsylvania. (Decl. of Francis X. Flynn ("Flynn Decl.") ¶ 2, ECF No. 11-1.) The search also revealed PPG acquired Courtaulds, located in Glendale, California, in 2000 for $512.5 million (Flynn Decl. ¶ 3.) Flynn then states, "[t]he foregoing information, which admittedly does not constitute evidence, serves to place doubt on defense counsel's unsupported and conclusory statement that PPG's 'nerve center' and thus its principal place of business is in Pittsburg[h], Pennsylvania." (Flynn Decl. ¶ 3.)

PPG argues that it is a citizen of Pennsylvania because it was incorporated in the State of Pennsylvania and its nerve center is located at One PPG Place, Pittsburgh, Pennsylvania. (Notice of Removal 14–15.)

PPG filed an opposition to the Motion and the Declaration of Greg E. Gordon ("Gordon") on June 17, 2019. (Decl. of Greg E. Gordon ("Gordon Decl."), ECF No. 13-1.) Gordon is the Senior Counsel for PPG. (Gordon Decl. ¶ 2.) Gordon states that PPG has several headquarters across the world, but its global headquarters is in Pittsburgh, Pennsylvania. (Gordon Decl. ¶ 4.) Further Gordon states that, "PPG's primary administrative and financial offices, including human resources, benefits and payroll are located in the Commonwealth of Pennsylvania, and a substantial majority

of the corporate decisions including operational, executive and administrative policy are all made at its headquarters." (Gordon Decl. ¶ 4.) Gordon states the majority of PPG's corporate officers including the Chief Executive Officer, Senior Vice President, and Chief Financial Officer all maintain offices at the headquarters in Pittsburgh. (Gordon Decl. ¶ 7.) The annual meeting of shareholders is held in Pittsburgh, Pennsylvania. (Gordon Decl. ¶ 9.)

Based on all of the information provided by both parties, the Court finds that PPG's nerve center is located in Pittsburgh, Pennsylvania. *See L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 940 (C.D. Cal. 2011) (finding defendant's nerve center in Massachusetts despite extensive business activity in California, because the board of directors met in Massachusetts, the CEO worked there, nationwide operations, control of human resources, information technology and finance departments originated in Massachusetts and the California Secretary of State recognized the company's headquarters was located in Massachusetts).

Here, several corporate officers, including the CEO, work out of the Pittsburgh headquarters. (Gordon Decl. ¶ 7.) The annual shareholders meeting is in Pittsburgh. (Gordon Decl. ¶ 9.) Furthermore, Flynn's declaration concedes that PPG's corporate headquarters, registered with the State of California, is in Pittsburgh, Pennsylvania. (Flynn Decl. ¶ 2.) The purchase of Courtaulds, almost twenty years ago, does not cast any doubt that PPG's nerve center remains in Pittsburgh, Pennsylvania. *See In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09MD2087-BTM(AJB), 2010 WL 2998855, at *2 (S.D. Cal. July 29, 2010) (finding that the company nerve center was in Ontario, Canada despite the presence of a large New York facility because high level executive decisions were made in Ontario, Canada). Therefore, the Court finds that PPG is a citizen of Pennsylvania.

**C. Sham or Nominal Defendant**

Robinson argues that complete diversity does not exist because he and Sebold are both citizens of California. (*See* Mot. 6; Compl. ¶¶ 5, 9.) As PPG does not

dispute that Sebold is a citizen of California, the issue is whether Sebold is a proper party to the action. (*See* Opp'n to Mot. ("Opp'n") 2, ECF No. 13.)

Complete diversity of citizenship is required to remove an action to federal court, except for "where a non-diverse defendant has been 'fraudulently joined.'" *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). A non-diverse defendant is fraudulently joined "[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987); *see also Padilla v. AT & T Corp.*, 697 F. Supp. 2d 1156, 1158 (C.D. Cal. 2009) (citing *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989) ("[A] non-diverse defendant is deemed a sham defendant if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned.").

Courts recognize a strong presumption against fraudulent joinder, which must be "proven by clear and convincing evidence." *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). Consequently, the standard for establishing fraudulent joinder is more exacting than for dismissal for failure to state a claim. *Grancare, LLC v. Thrower ex rel. Mills*, 889 F.3d 543, 549–50 (9th Cir. 2018); *see also Revay v. Home Depot U.S.A., Inc.*, No. 2:14-CV-03391-RSWL-AS, 2015 WL 1285287, at *3 (C.D. Cal. Mar. 19, 2015) ("Merely showing that an action is likely to be dismissed against the alleged sham defendant does not demonstrate fraudulent joinder."). Thus, remand is necessary "[i]f there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, or in a future amended complaint." *Revay*, 2015 WL 1285287, at *3 (internal quotation marks omitted); *see also Barsell v. Urban Outfitters, Inc.*, No. CV 09-02604 MMM (RZx), 2009 WL 1916495, at *3 (C.D. Cal. July 1, 2009) (alteration in original) ("[I]f there is a non-fanciful possibility that plaintiff can state a claim under [state] law against the non-diverse defendants[,] the court must remand.").

Courts should decline to find fraudulent joinder where "a defendant raises a defense that requires a searching inquiry into the merits of the plaintiff's case, even if that defense, if successful, would prove fatal." *Grancare*, 889 F.3d at 549–50.

Here, the face of the Complaint fails to name Sebold as a defendant in the four causes of action. (*See* Compl. 6, 7, 10, & 11.) Robinson concedes to a Scrivener's error and asserts that the heading for the third cause of action of harassment is erroneously asserted against PPG and DOES 1–10. (Mot. 4.) Robinsons argues that the substance of the Complaint makes it clear the harassment cause of action is asserted against Sebold. (Mot. 4; *see* Compl. ¶¶ 50–56.) Even if the Court determines omitting Sebold in the heading of the third cause of action is a Scrivener's error, Robinson fails to establish that Sebold can be held liable for harassment. (*See* Compl. ¶¶ 50–56.)

Under FEHA, only an employer can be held liable for discriminatory employment actions, whereas an individual employee and an employer can be held liable for harassment. *Tipton v. Airport Terminal Servs., Inc.*, No. 2:18-CV-09503-AB-JEM, 2019 WL 185687, at *6 (C.D. Cal. Jan. 14, 2019).

As to the issue of the Court deciding whether Sebold can be held liable for harassment is a central issue to resolving the Motion, the Court now turns to the precedent established in *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55 (1996).

> [T]he Legislature intended that commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment. These are actions of a type necessary to carry out the duties of business and personnel management. These actions may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not harassment. Harassment, by contrast,

> consists of actions outside the scope of job duties which are not of a type
> necessary to business and personnel management. This significant distinction
> underlies the differential treatment of harassment and discrimination in the
> FEHA.

*Janken*, 46 Cal.App. 4th at 64-65. Here, the allegation of Sebold choosing not to hire Robinson is a management action. (Mot. 8.) Deciding who not to hire is the kind of action that is necessary to business and personnel management. *See Reno v. Baird*, 18 Cal. 4th 640, 646, (1998) (finding a supervisory employee simply cannot perform their job duties without making personnel decisions). Consequently, if Sebold decided to not hire Robinson because he was "too old" the remedy provided by FEHA is for discrimination against the employer, not harassment against an employee. *See Janken*, 46 Cal.App. 4th at 80 (holding "[i]f personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination"). According to the alleged facts in the complaint, Robinson cannot establish that Sebold committed harassment pursuant to the FEHA, therefore, the Court finds Sebold is a sham defendant. Accordingly, the Court **DISMISSES** Sebold from this case **WITH PREJUDICE**.

The Court finds that there is complete diversity between Robinson and PPG.

**D. Amount in Controversy**

The amount in controversy in a diversity action is determined from the allegations or prayer of the complaint. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). Here, Robinson alleges, "[a]ll foregoing damages in an aggregate amount not less that $2 million." (Compl., Pl.'s Prayer for Relief ¶ 9, ECF No. 1-1.) PPG denies liability to Robinson in any amount, but states the Complaint affirmatively places the amount in controversy greater than $75,000. (Notice of Removal ¶ 25, ECF No. 1.)

Robinson does not discuss the amount in controversy in his Motion. (Mot. 3–13.) Robinson does state that the amount in controversy does not necessarily exceed $75,000 in his reply to PPG's Opposition. (Pl.'s Repl. 4, ECF No. 15.) The Court

will not consider this argument because it was first raised in Robinson's reply brief. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) *citing Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003) (finding the district court need not consider arguments raised for the first time in a reply brief). Thus, the Court finds the amount in controversy is over $75,000.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand is **DENIED**.

**IT IS SO ORDERED.**

October 17, 2019

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**