1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**O**

# United States District Court
# Central District of California

ELWYN ROBINSON,

             Plaintiff,

    v.

PPG INDUSTRIES, INC., et al.,

             Defendants.

Case № 2:19-cv-04033-ODW (RAOx)

**ORDER STRIKING CORRECTED OPPOSING SEPARATE STAEMENT [63] AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [53]**

## I. INTRODUCTION

Plaintiff Elywn Robinson applied for a job working as a Production Supervisor for Defendant PPG Industries, Inc. and was not hired because he was "too senior" for the role. Plaintiff is suing Defendant under California's Fair Employment and Housing Act (FEHA) for age discrimination and related claims. (Notice of Removal Ex. B ("Compl."), ECF No. 1-2.) Before the Court is Defendant's Motion for Summary Judgment. (Mot. Summ. J. ("Mot." or "Motion"), ECF No. 53.) For the reasons discussed below, the Court **GRANTS** Defendant's Motion.[1]

## II. FACTUAL BACKGROUND

Robinson was born on November 16, 1957. (Compl. ¶ 10.) His experience and education pertinent to commercial manufacturing operations includes a master's

---

[1] After considering the papers in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

degree in business administration, a Project Management Professional certification, and a graduate degree in Lean Six Sigma. (*Id.* ¶¶ 11–12.)

PPG manufactures paints, coatings, and sealants for customers in the industrial, automotive, aerospace, and construction industries, and it operates a facility in Mojave, California for that purpose. (Decl. Paula Holman ("Holman Decl.") ¶ 2, ECF No. 53-3.)

PPG engaged Ron Lyndon, a third-party recruiter, to identify potential candidates for two production supervisor positions at PPG's Mojave facility. (Decl. David Sebold ("Sebold Decl.") ¶ 3, ECF No. 53-4.) Lyndon's role was to identify and screen candidates that met the basic criteria for the role and to send their resumes to the individual at PPG responsible for hiring at the Mojave facility, David Sebold. (Decl. Joseph A. Govea ("Govea Decl.") Ex. A (Dep. Ron Lyndon ("Lyndon Dep.")) 14:14-15:1, ECF No. 53-5.)

In early October 2018, Lyndon told Robinson about the open position, (Compl. ¶ 14), and forwarded Robinson's resume to Sebold, (Govea Decl. Ex. B, Dep. Elwyn Dale Robinson ("Robinson Dep.") Ex. 5). On October 10, 2018, Sebold conducted a telephonic interview with Robinson. (Compl. ¶¶ 14–15.) Sebold told Robinson he was under consideration for the position and the interview concluded on cordial terms. (*Id.* ¶ 15.)

On October 15, 2018, Lyndon told Robinson in an email that Sebold was concerned that Robinson was "too senior" for the role. (Compl. ¶ 16.) Robinson responded with an email stating the following:

> I understand. I believe being too senior is the battle I am having everywhere I interview. If they are looking for someone who will be around for 20 years, I am not that guy as I am now 60 years old but I do not have any health issues. I will wait to hear what you find out.

(Robinson Dep. Ex. 7.) On October 23, 2018, Lyndon sent Robinson an email confirming that PPG "did decide" that he was "too senior" for the position. (Compl. ¶ 18.) Robinson was not offered an in-person interview and he was not offered the

position.  He was sixty-one years old at the time.  (*See* Compl. ¶ 10.)

Robinson was one of ten external candidates Lyndon sent Sebold.  (Sebold Decl. ¶ 10.)   Of these ten external candidates, PPG selected two for an in-person interview.  (*Id.*)  PPG ultimately selected none of these external candidates, instead selecting two internal candidates for the positions.  One was a production worker for PPG's sealant unit who was essentially performing the duties of a production supervisor at the time without the title.  (*Id.* ¶ 14.)  The other had been working for PPG for over thirty years, had previously held the same production supervisor position with PPG, and was, at the time, fifty-seven years old.  (*Id.*; Govea Decl. Ex. F ("Supervisor Resumes").)

## III.   PROCEDURAL BACKGROUND

Robinson brought this action against PPG and Sebold for violations of the FEHA, Cal. Govt. Code § 12940, asserting claims for: (1) age discrimination; (2) retaliation; (3) harassment; and (4) failure to prevent discrimination, harassment, or retaliation.  (Compl. ¶ 20–69.)   Robinson alleges that factors substantially motivating PPG's decision to not hire him were his age and his opposition to the perception that he was "too senior."  (*Id.*¶ 19.)

On May 8, 2019, PPG removed this action based on federal diversity jurisdiction.  (Notice of Removal 1.)  Robinson moved to remand on the basis of lack of diversity jurisdiction.  (Mot. Remand, ECF No. 11.)  The Court denied the Motion, finding Sebold to be a sham defendant and dismissing him from the action.  (*Id.* at 8.)  In so doing, the Court noted that the only claim Robinson had asserted against Sebold was the harassment claim and found that no claim for harassment against Sebold was or could be alleged under the facts of the case.  (*Id.*)

On June 11, 2021, PPG filed its initial Motion for Summary Judgment.  (ECF No. 33.)  Shortly thereafter, Robinson made his first of a hydra-like series requests for more time to oppose PPG's motion.  (Ex Parte Appl., ECF No 34.)   Robinson requested more time primarily to complete depositions and other discovery.  (Ex Parte

Appl. 2.)  The Court ultimately granted Robinson's Application in part, providing him with more time to oppose and noting that both sides appeared to have engaged in "unprofessional gamesmanship." (Min. Order, ECF No. 36.)

Not long thereafter, Robinson filed a noticed motion to continue the deadline to file his opposition to PPG's Motion for Summary Judgment. (Mot. Continue, ECF No. 41.)  PPG opposed. (ECF No. 44.)  Robinson then filed a late reply, (ECF No. 48), and a second ex parte application which asked the Court deem the late reply timely (ECF No. 50.)  The Court denied the ex parte application, struck the late reply, and ordered Robinson's counsel to show cause why he should not be sanctioned for misuse of ex parte applications. (ECF No. 52.)

Then, before the Court ruled on Robinson's motion to continue, PPG proceeded to file the operative amended Motion for Summary Judgment, as permitted by the Court in a prior Minute Order dated June 28, 2021. (ECF No. 36.)  After PPG filed its amended Motion, the Court observed that PPG's amended Motion left Robinson's motion to continue in "procedural limbo" and provided the parties an opportunity to submit supplemental briefing on the need for a continuance. (Min. Order, ECF No. 54.)  Ultimately, the Court denied Robinson's motion to continue and set a briefing schedule for PPG's Motion for Summary Judgment. (Order Denying Mot. Continue, ECF No. 57.)

Under that briefing schedule, Robinson filed his opposition one day late, (ECF No. 59), and a corrected opposition the following day—that is, two days late, (Opp'n, ECF No. 60).  As a result of counsel's late filings, the Court again adjusted the hearing and briefing schedule, discharged its prior order to show cause, and ordered Robinson's counsel to show cause why sanctions should not be imposed for filing late opposition briefs. (Min. Order, ECF No. 61.)

PPG filed its Reply to Robinson's Opposition. (Reply, ECF No. 62.)  Then—after PPG had already replied, and while the Court's Order to Show Cause regarding Robinson's late filings was still pending—Robinson filed an untimely "Corrected"

Opposing Separate Statement.  (ECF No. 63.)

On September 7, 2021, the Court took PPG's Motion for Summary Judgment under submission.  (ECF No. 66.)  The Court's second order to show cause (regarding striking the opposition brief and sanctions) is still outstanding.

## IV.   LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See id.*; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).  The non-moving party must show that there are "genuine factual issues that . . . may reasonably be resolved in favor of either party." *Franciscan Ceramics*, 818 F.2d at 1468 (quoting *Anderson*, 477 U.S. at 250) (emphasis omitted).  The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to its case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

In ruling on summary judgment motions, courts view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).  However, "uncorroborated and self-serving"

testimony will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). "Conclusory" or "speculative" testimony is likewise "insufficient to raise genuine issues of fact and defeat summary judgment." *See Hous. Rights Ctr. v. Sterling*, 404 F. Supp. 2d 1179, 1183 (C.D. Cal. 2004). Though the Court may not weigh conflicting evidence or make credibility determinations, a plaintiff must ultimately provide more than a "scintilla" of contradictory evidence to avoid summary judgment. *Anderson*, 477 U.S. at 251–52; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

## V.    DISCUSSION

The Court first addresses its outstanding Order to Show Cause and other procedural considerations before proceeding to the merits.

### A.    Procedural Considerations

Rather than impose monetary sanctions, the Court finds ample basis to disregard Robinson's late Opposition as a result of Robinson's counsel's chaotic litigation tactics and pervasive failure to respect federal procedure. The Court therefore **DISCHARGES** its August 25, 2021 Order to Show Cause, (ECF No. 61), exercises its discretion to disregard Robinson's late Opposition, and proceeds to grant PPG's Motion on two independent, alternative bases—the first disregarding Robinson's Opposition, and the second considering it. Separate and apart from these considerations, the Court further strikes Robinson's Corrected Separate Statement.

### 1.    *Order to Show Cause Regarding the Late Opposition*

Robinson's counsel's responses to the aforementioned August 25, 2021 Order to Show Cause consist primarily of a showing of the health problems counsel was experiencing close to the opposition deadline as well as a showing that counsel's firm is overwhelmed and understaffed. (Decl. Francis X. Flynn ("Flynn Decl."), ECF No. 64; Decl. David R. Denis ("Denis Decl."), ECF No. 65.) Even assuming that counsel make a strong showing in both these senses, counsel's declarations and argument miss the broader point of the Court's Order to Show Cause and the reasons

for imposing consequences for missing deadlines.  By fixing their focus solely on the time crunch leading up to the date the opposition was due, counsel fail to address the fact that PPG's original motion for summary judgment was filed on June 11, 2021.  The original motion and the operative Motion are substantially similar.  Ultimately, Robinson's opposition was not due until August 19, 2021.  In the typical case, a party before this Court has two weeks to oppose a motion for summary judgment.  (C.D. Cal. L.R. 6-1, 7-9; Scheduling & Case Management Order 6, ECF No. 24 (modifying Local Rules).)  In this case, Robinson had almost ten weeks—and his opposition was still two days late.

Moreover, the case schedule was set, and discovery opened, by June 18, 2020.  Counsel makes no attempt to explain why they delayed in deposing key employees and conducting other ostensibly important discovery during the year leading up to the supposed time crunch.  In one of their prior applications, counsel bolded and italicized a date in March 2021 to emphasize that they first began trying to take depositions on that date, but this is not the badge of honor counsel seems to think it is, given that discovery had already been open for ten months by that point.  (Ex. Parte Appl. 2.)

The topic of depositions was on the minds of Robinson's counsel even earlier than that.  On February 12, 2021, counsel filed their first ex parte application asking the Court to revise the scheduling order so counsel could have more time to depose witnesses.  (Ex Parte Appl. Revise, ECF No. 28.)  That somewhat bizarre filing is devoid of any indication as to why the parties had not been able to conduct discovery during the first eight months it was open.

When the Court takes a bird's-eye view of the record, Robinson's counsel's strategy starting in early 2021 becomes clear.  Robinson's myriad requests for continuances were never about needing more time to draft an opposition; they were about counsel's attempts to arrange things so that they had substantial time to conduct discovery *after* PPG filed its motion for summary judgment.  When PPG's counsel refused to stipulate to as much, counsel proceeded to file a disingenuous ex parte

application requesting continuances.  (*See* Ex Parte Appl. Revise.)  The Court did not take the bait, (Mins., ECF No. 32), setting off a series of applications, requests, and responses that would ultimately span almost three dozen docket entries for a process that, in the ordinary case, occupies a grand total of three docket entries.

This Court rejects Robinson's counsel's attempt to use chaotic litigation tactics to unilaterally alter the basic rules of discovery and case management.  During the discovery phase, it is incumbent on *both* sides to take initiative to gather evidence for their claims and defenses in anticipation of the dispositive motions and trial to come. The Court sets the motion and discovery cut-off dates early in the proceedings, and parties are expected to organize their efforts accordingly.  Robinson's counsel sought to toss this widely recognized and time-tested approach in favor of an entirely different process where Robinson, the plaintiff, would have a special additional period to conduct discovery after PPG had already reduced all its arguments to paper in a summary judgment motion.

Aside from being wildly inefficient, this approach would be manifestly unfair to PPG and illogical in light of the fundamental policy underlying civil discovery.  For the civil plaintiff, the primary purpose of discovery is to help the plaintiff gather evidence to support his claims.  *Keith H. v. Long Beach Unified Sch. Dist.*, 228 F.R.D. 652, 655 (C.D. Cal. 2005) ("[T]he purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute.").  When a defendant moves for summary judgment, the plaintiff should be able to use the evidence he gathered in support of his case to refute a defendant's argument and show that there is a triable issue.  When a plaintiff seeks to reverse this process in order to see a defendant's summary judgment arguments before knowing what discovery to take, the court is justified in questioning how strong the plaintiff's theory of the case is in the first place.

Counsel's oppositions were late not primarily because of last-minute unforeseen circumstances; they were late primarily because of a pervasive failure to timely

conduct discovery.  This is why counsel's proffered justifications, which focus on the vortex of personal and professional challenges in the days leading up to the opposition deadline, fall flat.  In light of Robinson's counsel's failure to respect the procedures and deadlines set forth by the Federal Rules, the Local Rules, and this Court, the Court disregards the original Opposition, (ECF No. 59), and the amended Opposition, (ECF No. 60), as untimely.

The Court may not grant a summary judgment motion solely based on the opponent's failure to timely file an opposition.  C.D. Cal. L.R. 7-12; *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).  That said, the failure to file an opposition by a given deadline may form part of the basis of the Court's ruling on a motion for summary judgment, a point to which the Court returns throughout this Order.

### 2. *Corrected Separate Statement*

Apart from the foregoing exercise of discretion to disregard Robinson's opposition, there is a separate rationale on which the Court strikes Robinson's Corrected Separate Statement, filed on September 1, 2021.  (ECF No. 63.)  Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" (often called a "Separate Statement," reflecting California state court practice) that sets out "the material facts as to which the moving party contends there is no genuine dispute."  C.D. Cal. L.R. 56-1.  The party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute.  C.D. Cal. L.R. 56-2.  When prepared according to the Court's Scheduling and Case Management Order, (ECF No. 24), the result is a jointly prepared two-column document containing an organized presentation of the filing party's assertions, the filing party's supporting evidence, and the responding party's statement of dispute and supporting evidence.

Robinson's failure was not merely that he filed his Corrected Separate Statement after it was due; instead, he filed it after PPG had already filed its own Reply and had prepared a Reply Separate Statement in response to Robinson's own Separate Statement.   Accepting Robinson's Corrected Separate Statement would render PPG's Reply Separate Statement moot, and the Court would need to provide PPG with an opportunity to amend its Reply Separate Statement—all at additional cost to PPG and further delaying the resolution of this case.  *See* Fed. R. Civ. P. 1.

Robinson's counsel suggest the Court should strike the Reply Separate Statement as violative of this Courtroom's rules and provide PPG with an opportunity to file a compliant Reply Separate Statement in response to Robinson's Corrected Separate Statement.   (Flynn Decl. ¶ 17; Denis Decl. ¶ 30.)   After the litany of procedural failures on Robinson's counsel's part, their suggestion that the Court should strike something of PPG's on the basis of a procedural error takes quite a bit of chutzpah.[2]  The Court declines Robinson's counsel's suggestion.

The Court therefore **STRIKES** Robinson's Corrected Separate Statement because Robinson filed it several days after PPG had filed its Reply, thus depriving PPG of a proper opportunity to respond.  (ECF No. 63.)

**B.    Evidentiary Objections**

Robinson submitted eighteen evidentiary objections along with his original Opposition to PPG's Motion.  (Objections, ECF No. 59-2.)  Preliminarily, it is unclear whether Robinson intended to withdraw his objections, as he omitted his evidentiary objections when he filed his revised Opposition.   Regardless, in exercising its

---

[2] *See Chaffee v. Kraft Gen. Foods, Inc.*, 886 F. Supp 1164, 1167 (D.N.J. 1995) (defining chutzpah as "gall, brazen nerve, effrontery, incredible 'guts'; presumption-plus-arrogance such as no other word, and no other language, can do justice to" (quoting Leo Rosten, The Joys of Yiddish 92–93 (1968)); *but see Yates v. City of New York*, No. 04 Civ. 9928(SHS), 2006 WL 2239430, at *1 (S.D.N.Y. Aug. 4, 2006) (observing that "[t]he word chutzpah, despite not debuting in a reported judicial opinion until 1972, is now vastly overused in the legal literature" before proceeding to use it to describe the plaintiff's actions).

discretion to disregard Robinson's Opposition, the Court also disregards his evidentiary objections.

In the alternative, even if the Court considers Robinson's objections, they are all deficient. Each objection is a boilerplate objection devoid of evidence-specific arguments. In this Courtroom, blanket or boilerplate objections such as Robinson's are disregarded and overruled. (Scheduling & Case Management Order 8, 17.) Robinson's objections are disregarded on this alternative basis.

## C. Merits of Summary Judgment Motion

Proceeding to the merits, the Court finds that PPG meets its burden on summary judgment as to all five challenged claims. From that finding, the Court proceeds to grant PPG's Motion and dismiss each claim on two alternative bases: first, based on Robinson's failure to timely oppose, and second, even if the Court considers Robinson's opposition, Robinson fails to raise any triable issue.

### 1. Discrimination

Robinson's first claim is for discrimination in violation of FEHA. (Compl. ¶¶ 20–32.) FEHA makes it unlawful for an employer to take an adverse employment action against an employee over the age of forty because of that employee's age. Cal. Gov't Code §§ 12926(b), 12940(a). To establish a prima facie case of age discrimination under FEHA in the failure-to-hire context, a plaintiff must plead and prove that (1) he was in a protected class based on his age, (2) he was qualified for the available position he sought, (3) despite his qualifications, he was rejected, and (4) some other circumstance suggests discriminatory motive. *Carden v. Chenega Sec. & Prot. Servs., LLC*, No. CIV. 2:-09-1799 WBS CMK, 2011 WL 1807384, at *5 (E.D. Cal. May 10, 2011); *see Abed v. W. Dental Servs.*, 23 Cal. App. 5th 726, 736 (2018) (failure to hire due to candidate's pregnancy); *Sada v. Robert F. Kennedy Med. Ctr.*, 56 Cal. App. 4th 138, 149 (1997) (failure to hire due to candidate's national origin and ancestry).

Discrimination claims under FEHA are generally subject to a burden-shifting analysis. *See, e.g.*, *Wills v. Superior Court*, 195 Cal. App. 4th 143, 159 (2011). That is, the plaintiff must first establish a prima facie case of discrimination. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005). Once the plaintiff establishes a prima facie case, the employer then bears the burden to offer a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the employer produces a legitimate reason for the adverse employment action, the presumption of discrimination "'drops out of the picture,' and the burden shifts back" to the plaintiff to prove intentional discrimination. *Id.* (quoting *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 68 (2000)).

However, when an employer moves for summary judgment, "the burden is reversed . . . because the defendant who seeks summary judgment bears the initial burden." *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (internal quotation marks omitted). Thus, to prevail on summary judgment, the employer is required to "show either that (1) plaintiff could not establish one of the elements of [the] FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision" for the failure to hire. *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1242 (9th Cir. 2013) (alteration in original). If the employer meets its burden, then the plaintiff "must demonstrate either that the defendant's showing was in fact insufficient or . . . that there was a triable issue of fact material to the defendant's showing," such as by submitting evidence showing the defendant's proffered reason for the decision was pretextual. *Id.* (internal quotation marks omitted). "In short, by applying *McDonnell Douglas*'s shifting burdens of production in the context of a motion for summary judgment, the judge [will] determine whether the litigants have created an issue of fact to be decided by the jury." *Caldwell v. Paramount Unified Sch. Dist.*, 41 Cal. App. 4th 189, 203 (1995) (internal quotation marks removed).

    *a.    No direct evidence*

Courts should not apply the burden-shifting framework, however, when the plaintiff has direct evidence of discrimination or retaliation. *Morgan*, 88 Cal. App. 4th at 67. "Direct evidence is evidence which proves a fact without inference or presumption," *Trop v. Sony Pictures Entm't Inc.*, 129 Cal. App. 4th 1133, 1145 (2005), and includes situations where the employer expressly states that it acted against the employee on an unlawful basis. *See DeJung v. Superior Court*, 169 Cal. App. 4th 533, 550 (2008) (finding direct evidence of age discrimination where the employer expressly told plaintiff they would not hire him because they were "looking for someone younger"); *Green v. State*, 42 Cal. 4th 254, 275 (2007) (finding direct evidence of disability discrimination where supervisor told employee that he could not return to work because he had hepatitis C).

Robinson argues that Lyndon's statement that Sebold passed on Robinson because he was "too senior" for the role constitutes direct evidence of age discrimination. Preliminarily, however, because Robinson filed his Opposition late, the Court exercises its discretion to disregard Robinson's Opposition, including the evidence presented with it. Not having opposed, Robinson fails to present direct evidence of discrimination, and the Court will proceed to analyze PPG's evidence under the burden-shifting framework.

In the alternative, even if the Court considers Robinson's Opposition and evidence, Robinson nevertheless fails to present any direct evidence of age discrimination. First, Lyndon's "too senior" remark is not direct evidence because it requires the "presumption," *Trop*, 129 Cal. App. 4th at 1145, that Sebold indeed used the phrase "too senior" in speaking to Lyndon. As Lyndon testified in his deposition, he could not remember whether Sebold used the phrase "too senior" or "overqualified." (Govea Decl. Ex. A (Dep. Ron Lyndon ("Lyndon Dep.")) 14:12-15:8[3].) The phrase "too senior" was Lyndon's, not Sebold's, and one must

---

[3] The Lyndon Deposition submitted by PPG is unpaginated, so the Court uses the page numbers found on the CM/ECF ribbon.

1  speculate to conclude that Sebold himself used this phrase.[4]

2      Second, even if Sebold did use the phrase "too senior," a too-tenuous

3  "inference," *Trop*, 129 Cal. App. 4th at 1145, is required to determine that he meant

4  "too old." The Court makes this determination with a view of the entire record. *See*

5  *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 543 (9th Cir. 1975) ("[O]n a

6  motion for summary judgment the trial court . . . , examining the entire record, . . .

7  decides the limited question of whether any factual issue exists."). When the Court

8  places Robinson's single piece of purportedly direct evidence in context with the rest

9  of the record, it becomes clear that "too senior" does not necessarily mean "too old,"

10  and that some additional inference is required. First, Lyndon, who is not a PPG

11  employee and would have had little to lose by reporting discrimination, testified in

12  deposition that, if he had a concern that Sebold's comment was indicative of age

13  discrimination, he would have reported it to PPG's HR Department, with which he

14  had a working relationship at the time. (Lyndon Dep. 15:14-16:20; *see also id.*

15  at 17:3-25 (Lyndon recalls reporting age discrimination-related feedback to the HR of

16  other companies for which he had done recruitment work).) Moreover, in an email

17  Lyndon sent Sebold the week after Robinson's interview, Lyndon wrote:

18
19  > Elwyn had asked for an update so I let him know there were some
> concerns about him being too senior. He replied that he understood. He
20  > also informed me that he is 60 years old.
21  > I don't think you have to worry about him wanting to advance or being
> restless. I think it['] a good opportunity to take someone with a ton of
22  > experience who will probably be retiring in 5 years and let them help
23  > train the next group of Supervisors.

24  (Robinson Dep. Ex. 5 ("Lyndon Follow-Up Email").) The way this email is written

25  makes clear that in Lyndon's communications with Sebold, the concept of "senior" is

26

27  [4] Lyndon's own use of the phrase "too senior" cannot create liability for PPG. Although Robinson makes scattered references in his Opposition to the theory of agency, Robinson's theory of the case
28  is not, and has never been, that Lyndon as an agent of PPG committed discrimination. His theory is that PPG committed discrimination and that Lyndon merely relayed it.

1    separate from any consideration regarding Robinson's age.

2          Moreover, it is undisputed that one of the hired individuals was fifty-seven

3    years old—only four years younger than Robinson was when PPG chose not to hire

4    him.  (Holman Decl. ¶ 5.)

5          In short, too much in the record militates against the conclusions Robinson

6    urges—first, that Sebold himself said "too senior," and second, that he meant "too

7    old" by it—for the Court to conclude that Lyndon's email constitutes direct evidence

8    of discrimination on the part of PPG.  *See Goodman v. Raytheon Co.*, No. B252818,

9    2014 WL 6438725, at *10 (Cal. Ct. App. Nov. 17, 2014) (determining workplace use

10   of "senior guy," "super senior," and "young blood" did not constitute direct evidence

11   of discrimination).  Thus, if Robinson is to defeat PPG's Motion, Robinson will have

12   to do so with circumstantial evidence under the burden-shifting framework.

13               *b.   Circumstantial Evidence/Burden-Shifting Analysis*

14         Under the modified burden-shifting analysis courts use at summary judgment, it

15   is first the defendant's burden to proffer evidence and arguments showing a legitimate

16   reason for not hiring.  *Lawler*, 704 F.3d at 1242.  As the following discussion

17   indicates, the Court finds PPG meets this burden.  The Court then proceeds to dismiss

18   Robinson's discrimination claim on two alternative bases: his failure to timely oppose,

19   or, even if the Court considers his Opposition, his failure to raise a triable issue.

20         Before proceeding to the burden-shifting analysis, a preliminary point of

21   clarification is in order.  Robinson makes scattered references throughout his

22   Opposition to a third job opening at PPG which he was not offered.  Robinson

23   suggests PPG was concealing this opportunity from him, but this assertion is based

24   entirely on speculation.  Nothing credible in the record suggests PPG was hiding any

25   job opportunities from Robinson.  Instead, the record indicates that, if anything, it

26   would have fallen to Lyndon to be aware of opportunities at PPG and to forward them

27   to Robinson.  But Robinson is not alleging Lyndon discriminated against him in this

28

way.  Thus, the Court proceeds with its analysis focusing only on the two positions for which Robinson did in fact apply.

> i.    *PPG meets its burden and Robinson fails to timely oppose*

PPG proffers sufficient legitimate business reasons for not hiring Robinson for the production supervisor position and accordingly meets its burden on summary judgment.  Before explaining why, the Court makes one more preliminary observation to help focus the analysis.

In his Opposition, Robinson repeatedly refers to candidates that PPG invited for an in-person interview or otherwise advanced in the interview process but did not ultimately hire.  Robinson devotes much energy to arguing that he was more qualified than these candidates and that PPG did not follow its own internal policies in advancing these candidates.  (*See, e.g.*, Opp'n 2 (accusing PPG of illegally denying Robinson an in-person interview); 11–14 (detailed discussion of candidate screening process).)  An adverse employment action, however, is one that "materially affect[s] the terms and conditions of employment."  *Yanowitz*, 36 Cal. 4th at 1036.  Here, whether or not any of the other external candidates received an in-person interview, all the candidates except two experienced the same adverse employment action of not getting hired.  Because Robinson and the other rejected candidates all ultimately suffered the same adverse employment action, the fine distinctions Robinson makes between his qualifications and those of the other rejected candidates say precious little about whether PPG's motive was discriminatory.  Thus, to meet its burden on summary judgment, PPG is not required to offer a legitimate business reason for why it allowed each and every rejected candidate to make it to a certain stage in the interview process.  All it needs to do is show that it had a legitimate business reason for not hiring Robinson.

PPG makes this showing.  Although Robinson had many years of experience as a supervisor, PPG ultimately hired two candidates from within its own ranks who had relevant experience in manufacturing coatings and sealants.  Robinson suggests he had

experience with coatings and sealants, but the deposition testimony he cites does not support the proposition that he had experience with the process manufacturing of coatings and sealants—a process which he would be responsible for supervising. (Decl. David R. Denis ("Denis Decl.") Ex. 26 46:6-24.)  Thus, PPG ultimately chose candidates who were already working for the company and who had directly relevant experience with manufacturing coatings and sealants.  These considerations constitute legitimate reasons why PPG chose to hire candidates other than Robinson.

Moreover, PPG presents evidence by way of Sebold's Declaration that Sebold had concerns when Robinson, during his phone interview, said he was interested in the job's "growth potential."  (Sebold Decl. ¶ 5; Lyndon Follow-Up Email.)  Sebold was concerned that Robinson would find the role unfulfilling and would seek to promote out of the position or find another job.  (Sebold Decl. ¶ 5.)  Because PPG was interested in hiring a candidate who would stay content in the role, (id.), Sebold's concerns constitute a legitimate business reason not to have hired Robinson.  This does not appear to be a post-hoc explanation manufactured by Sebold for the purpose of this lawsuit, because in the Lyndon Follow-Up Email to Sebold, Lyndon appears to address these very concerns.  PPG meets its burden on summary judgment.

As discussed above, the Court may disregard Robinson's Opposition as part of its basis for granting summary judgment, but not as the sole basis.  C.D. Cal. L.R. 7-12.  This rule is based on the Ninth Circuit's decision in *Henry v. Gill Industries* explaining that a district court's discretion to grant summary judgment based on an opposition that is late under a local rule "is necessarily abused when exercised to grant a motion for summary judgment where the movant's papers are insufficient to support that motion or on their face reveal a genuine issue of material fact."  983 F.2d at 950. In other words, so long as the defendant's moving papers *are* sufficient to meet the defendant's burden on summary judgment, the Court may exercise its discretion to disregard an opposition pursuant to local rule and grant summary judgment thereupon.

That is precisely the discretion the Court possesses in this case and chooses to exercise.  PPG meets its burden on summary judgment, and the Court disregards Robinson's Opposition.   PPG is therefore entitled to summary judgment on Robinson's discrimination claim on this basis.

ii.   *PPG meets its burden and Robinson fails in his burden*

As an alternative basis for dismissal, even if the Court considers Robinson's untimely opposition, Robinson nevertheless fails in his burden.  Given that PPG meets its burden of proffering a legitimate, nondiscriminatory reason for not hiring Robinson, the burden falls to Robinson to present substantial evidence showing the reason to be a pretext for discrimination. *Lawler*, 704 F.3d at 1242.  Robinson fails in this burden.

First, Robinson makes extensive efforts to show that the two candidates that were hired were not as qualified as Robinson, including with evidence regarding the hired candidates' histories and how Robinson scored on a graded hiring rubric.  That a particularly underqualified candidate was hired over a qualified plaintiff can support a factfinder's inference "that the employer consciously selected a less-qualified candidate—something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture." *Reeves v. MV Transp., Inc.*, 186 Cal. App. 4th 666, 674-75 (2010).  Here, however, Robinson points out isolated incidents and facts that only weakly suggest the hired candidates were unqualified or that he was more qualified.  The fact remains that both these candidates were already employees of the company and had direct experience manufacturing sealants and coatings.  Robinson possessed neither of these traits.  Therefore, to show that he was more qualified than the hired candidates in a way that would materially affect the pretext analysis, Robinson needed to proffer strong and significant evidence that he was the better candidate in other ways.  The evidence Robinson submits to this end is insufficient, even when drawing all reasonable inferences in his favor.

Robinson argues that PPG's changing reasons for failing to hire him support an inference of discrimination.  (Opp'n 19.)  Evidence that an employer's stated reason is false, inconsistent with facts, or inconsistent over time may permit an inference that the reason was a pretext for a discriminatory motive.  *Mamou v. Trendwest Resorts, Inc.*, 165 Cal. App. 4th 686, 715 (2008).  But here, even under a reading of the record that is as favorable to Robinson as this Court can reasonably extend, the reasons PPG offered were compounding and overlapping reasons, not changing reasons.  Nothing in the record suggests, for example, that PPG offered one reason and then later changed that reason when it became obvious that its first reason was false, or, for example, that PPG's proffered reason was based on a fact that was objectively or verifiably false.  *See, e.g., Zaccagnini v. Chas. Levy Circulating Co.*, 338 F.3d 672 (7th Cir. 2003) (finding, in Age Discrimination in Employment Act case, verifiably false reason for adverse employment action to be evidence of pretext).  PPG's reasons for not hiring Robinson appear legitimate from the start, and the fact that multiple reasons ultimately supported PPG's choice to hire others does not mean that those reasons shifted in a way suggesting pretext.

Moreover, one of the candidates PPG ultimately hired was only four years younger than Robinson.  (Holman Decl. ¶ 5.)  Evidence that the individual the employer ultimately hired is in the same protected class as the plaintiff is generally considered strong evidence of a lack of pretext, because it suggests the plaintiff was rejected not because of his protected characteristic but instead for some other reason.  *Begnal v. Canfield & Assocs., Inc.*, 78 Cal. App. 4th 66, 76 (2000).  This fact further weakens any inference of discrimination.

What remains is the core piece of circumstantial evidence Robinson presents in support of his discrimination claim: Lyndon's email informing Robinson that Sebold determined Robinson was "too senior" for the role.  Several courts have found that nearly identical comments are not evidence of age discrimination and have dismissed or granted summary judgment on that ground.  In *Goodman*, the trial court granted

summary judgment in the employer's favor because the employee failed to submit sufficient evidence of discriminatory motive, and the California Court of Appeal affirmed.  2014 WL 6438725, at *10.  Even though the terms "super senior," "senior guy," and "young blood" had been used in the workplace, the court nevertheless affirmed the lack of triable issues based on the overall weakness of the remainder of the plaintiff's showing of discriminatory motive.  *Id.* at 12; *see also Villareal v. ExxonMobil Corp.*, No. B245662, 2014 WL 1789547, at *5 (Cal. Ct. App. May 6, 2014).

The same weakness exists here.  Beyond the "too senior" comment itself, Robinson's remaining showing of pretext is pervasively weak.  Robinson fails to raise a triable issue regarding discriminatory motive.  PPG's Motion is **GRANTED** as to Robinson's discrimination claim.

### 2.   Retaliation

Robinson's second claim is for retaliation in violation of FEHA.  (Compl. ¶¶ 33–45.)  FEHA provides that no employer may "discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under [FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under [FEHA]."  Gov't Code § 12940(h).  Employees and applicants "may establish a prima facie case of unlawful retaliation by showing that (1) they engaged in activities protected by the FEHA, (2) their employers subsequently took adverse employment action against them, and (3) there was a causal connection between the protected activity and the adverse employment action." *Miller v. Dep't of Corr.*, 36 Cal. 4th 446, 472 (2005).  The aforementioned burden-shifting analysis applies in equal measure to retaliation claims.  *McRae v. Dep't of Corr. & Rehab.*, 142 Cal. App. 4th 377, 388 (2006).

Robinson's retaliation claim is deficient on two separate bases.  The first is the lack of protected activity, analysis of which does not involve burden-shifting.  The

second is the lack of a nexus to the asserted protected activity, analysis of which does involve burden-shifting.

First, PPG presents evidence and arguments that directly negate the first element of Robinson's claim for retaliation by showing a lack of protected activity. Namely, PPG's evidence indicates that Robinson's October 15, 2018 email to Lyndon was the only communication Robinson ever made that might possibly be construed as a complaint or opposition to a practice forbidden by FEHA. (*See* Robinson Dep. 40:13-19 (Robinson never spoke to anyone at PPG other than during his interview).) That email, quoted above, is a statement by Robinson on the overall success of his job search. Robinson stated that he was generally finding it difficult to find a job because of his age—no more, and no less. His email is devoid of any sort of accusation toward PPG or suggestion that Robinson believed PPG was, at that point, discriminating against him because of his age. A factfinder could not view Robinson's email and reasonably conclude that it constitutes either a complaint or an opposition to PPG's violation of FEHA. Cal. Gov't Code § 12940(h). This conclusion holds whether or not the Court considers Robinson's Opposition, because Robinson's Opposition raises no triable issue as to whether he engaged in a protected activity.

Second, assuming Robinson's October 15, 2018 email is protected activity, and proceeding under the burden-shifting analysis, PPG submits satisfactory evidence of a legitimate reason for not hiring Robinson, as discussed above. Disregarding Robinson's Opposition, the Court may end its analysis there and dismiss the retaliation claim. Even considering Robinson's Opposition, the record is wholly devoid of any evidence of a causal link between Robinson's email and PPG's decision not to hire him. PPG's evidence shows that by the time Lyndon relayed to Sebold any of Robinson's age-related concerns, Sebold had already made the decision not to hire Robinson. (Lyndon Follow-Up Email; Sebold Decl. ¶¶ 10, 12.) Thus, any knowledge Sebold may have had of Robinson's age-related complaints could not have

formed the basis for Sebold's decision.   Nothing Robinson submits logically controverts PPG's showing.

For these reasons, PPG's Motion is **GRANTED** as to Robinson's retaliation claim.

### 3.   Harassment

Robinson's third claim is for harassment in violation of FEHA.   (Compl. ¶¶ 46–57.)   Government Code section 12940(j)(1) prohibits harassment of an employee or applicant "because of" a number of protected categories, including age. Gov't Code § 12940(j)(1).   The elements of a cause of action for harassment under FEHA are: (1) the plaintiff belongs to a protected group; (2) the plaintiff was subject to harassment; (3) the harassment complained of was based on the plaintiff's membership in the protected group; (4) the harassment complained of was sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment; and (5) respondeat superior. *Jones v. Dep't of Corr. & Rehab.*, 152 Cal. App. 4th 1367, 1377 (2007).

The Court previously issued an order containing a partial determination on Robinson's harassment claim which is directly relevant here.   (Order Denying Mot. Remand, ECF No. 18.)   Accordingly, the law of the case doctrine applies to resolution of the present Motion.   This doctrine holds that "a court will generally refuse to reconsider an issue that has already been decided by the same court or a higher court in the same case."   *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012); *Chinatown Neighborhood Assoc. v. Harris*, 33 F. Supp. 3d 1085, 1093 (N.D. Cal. 2014).

Here, in its Order Denying Plaintiff's Motion to Remand, the Court considered Robinson's theory of the case as presented in his Complaint.   (Order Denying Mot. Remand 7.)   The Court noted that, under *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55 (1996), Sebold's decision not to hire Robinson was a management action necessary to business and personnel management and therefore not covered by

FEHA's harassment statute.   (Order Denying Mot. Remand 7–8 (citing *Janken*, 46 Cal. App. 4th at 64–65).)

Sebold's actions in not hiring Robinson were the only basis for harassment Robinson alleged.  (*See* Compl. ¶ 50.)  Thus, the very same basis that supported dismissal of Sebold from the harassment claim supports dismissal of the harassment claim altogether against PPG.  Robinson did not amend his Complaint to expand his harassment claim beyond the scope that the Court previously ruled was deficient. Thus, Robinson never alleged actionable harassment on the part of Sebold or anyone else at PPG, and he is therefore entitled to judgment as a matter of law.  The Court already considered this issue, and the law of the case doctrine accordingly directs the Court to refuse to reconsider the issue and to reach the same conclusion.

PPG devotes some of its Motion to arguing that there is no harassment because Robinson could not remember in his deposition any harassing question Sebold asked during the interview.  (Mot. 20.)  PPG's showing is unnecessary because Robinson's theory of the case, as alleged in the Complaint, does not include the theory that Sebold made harassing comments to Robinson during the interview.  "Summary judgment is not a procedural second chance" for Robinson "to flesh out inadequate pleadings." *Wasco Prods., Inc. v. Southwall Tech., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006); *James v. Dependency Legal Grp.*, 253 F. Supp. 3d 1077, 1090 (S.D. Cal. 2015).  Robinson's theory of harassment never included comments made during the telephone interview, and the Court is disinclined to grant leave to amend at this late stage in the litigation. The Court dismisses Robinson's harassment claim on this basis.

In the alternative, and considering the parties' arguments and evidence, PPG's Motion shows that the only action to which it subjected Robinson was its decision not to hire him on the basis of being "too senior."  Under *Janken*, this does not constitute harassment.  46 Cal. App. 5th at 64–65.  PPG therefore meets its burden.  Robinson fails to oppose, and the Court dismisses the harassment claim on that basis.

Alternatively, even considering Robinson's Opposition, Robinson fails to raise a triable issue as to whether PPG harassed him.

For these reasons, PPG's Motion is **GRANTED** as to Robinson's harassment claim.

### 4. Failure to Prevent

Robinson's fourth claim is for failure prevent discrimination, harassment, and retaliation in violation of FEHA. (Compl. ¶¶ 58–69.)   Government Code section 12940(k) prohibits an employer from failing—that is, it requires an employer—to "take all reasonable steps necessary to prevent discrimination and harassment from occurring."   Preliminarily, FEHA offers no claim for failure to prevent retaliation; failure to prevent claims are limited to discrimination and harassment.  Cal. Gov't Code § 12940(k).

More substantively, for the reasons discussed above, PPG meets its burden on summary judgment as to both the discrimination and harassment claims.   Employers are not liable to employees and applicants for failure to take necessary steps to prevent discrimination or harassment except where the discrimination or harassment actually took place and was not prevented. *Trujillo v. N. Cty. Transit Dist.*, 63 Cal. App. 4th 280, 289 (1998).  Thus, using the same framework as that used with the first three claims, the Court finds PPG meets its burden on summary judgment, and the Court grants PPG's motion on the alternative bases of Robinson's failure to oppose and his failure to raise a triable issue.  PPG's Motion is **GRANTED** as to Robinson's failure to prevent claim.

PPG is entitled to summary judgment as to all of Robinson's claims, and accordingly, PPG's request for summary judgment on the issue of punitive damages is moot.

///

///

///

## VI.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant PPG Industries, Inc.'s Motion in its entirety and **DISMISSES** Defendant from the action **WITH PREJUDICE**.  (ECF No. 53.)  All pre-trial and trial dates and deadlines are **VACATED**.  The Court will issue Judgment consistent with this Order.


**IT IS SO ORDERED.**


December 9, 2021

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**